**DAVID ALLEN (SBN 87193)**
DAVID ALLEN & ASSOCIATES
5230 Folsom Boulevard
Sacramento, California 95819
(916) 455-4800 Telephone
(916) 451-5687 Facsimile

Attorneys for Plaintiff
CRYSTAL TOBIN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL TOBIN,<br><br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, and DOES 1 to 100,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. Breach of ERISA Plan (ERISA 502(a)(1)(B) and 502(a)(3); and**<br>**2. Attorney Fees & Costs** |

**<u>Introduction</u>**

The policy is a contract outlining the obligations of the insurer and insureds. The policy obligates Defendant to pay qualified claimants. Defendant found Plaintiff qualified. Defendant paid Plaintiff. Defendant terminated payments when it determined Plaintiff's condition allowed her to work. Plaintiff provided evidence her condition prevented her from work. Defendant refused to reinstate benefits. Did Defendant breach its duty to Plaintiff?

**<u>ALLEGATIONS</u>**

1. This action seeks damages for the denial of total disability benefits under a disability insurance plan.

2. Attached are Bates stamped exhibits. Throughout this Complaint Bates stamps shall be

referenced without the additional Bates zeros for convenience, “001 through 035". Attached exhibits are true and correct copies (redacted pursuant to Federal Rules) of:

**Exhibit 1** THE LINCOLN NATIONAL LIFE INSURANCE COMPANY Policy #000010214576 - Bates Stamped PLAN 001 - PLAN 035,

**Exhibit 2** THE LINCOLN NATIONAL LIFE INSURANCE COMPANY California Secretary of State Corporate Filing Record showing the corporation was active in California for all dates at issue - Bates Stamped CA 001 - CA 002]

**The Parties**

3. Plaintiff CRYSTAL TOBIN worked for the City of Vallejo for 34 years. She began as an unskilled clerk and worked her way into a second level Human Resources Analyst position. She was the primary financial support for her family until her health prevented her from continuing work.

4. THE LINCOLN NATIONAL LIFE INSURANCE COMPANY is an insurance company underwriting, servicing, and performing all other functions necessary to place and administer benefits for various financial instruments including, without limitation, long term disability insurance policies. "LINCOLN" as used herein, designates THE LINCOLN NATIONAL LIFE INSURANCE COMPANY in all forms in which it exists or existed, or is recognized as existing, during relevant times mentioned in this complaint and in all forms in which it conducts business.

5. Plaintiff is informed and believes and upon such information and belief alleges that each of the defendants named herein was the agent or employee of each of the other defendants, or otherwise affiliated with them, in all the matters alleged herein, and in doing all the matters complained of, acting within the course and scope of such agency, employment or affiliation.

**Jurisdiction and Venue**

6. Venue is properly laid within the United States District Court, Eastern District of California, pursuant to 29 U.S.C. §1132(e)(2) because the employer, plan and administrator do business within this district, and because the ends of justice so require.

[**All Exhibits**]

7. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §1337 and 29 U.S.C. §1132(e). Plaintiff's claims arise under the "ERISA" 29 U.S.C. §1001, et. seq.

**Employment**

8. Plaintiff was employed by the City of Vallejo as a Personnel Analyst II. It is a sedentary job which requires continuous written and verbal communication; reasoning, math, and language; and frequent independent judgment.

**Plan**

9. LINCOLN issued a policy ("Plan") to Plaintiff's Employer, Policy No. 000010214576. LINCOLN also issued a Life Insurance Plan. [**Exhibit 1**]

10. Part of the compensation package EMPLOYER provided Plaintiff CRYSTAL TOBIN was insurance for long term disability. [**Exhibit 1**]

11. LINCOLN wrote and administered the insurance plan while doing business in California. [**Exhibit 2]**

12. Defendant LINCOLN is a corporation acting as the agent for EMPLOYER, and vice versa; Defendants are charged with certain claims-handling responsibilities under the Plan. [**Exhibit 1**]

13. Defendant LINCOLN funded the disability benefits under the Plan. [**Exhibit 1**]

14. The EMPLOYER Plan states:

"TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:

1. During the Elimination Period and Own Occupation Period, it means as a result of an Injury or Sickness the Insured Employee is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his or her Own Occupation and is not working in his or her Own Occupation.

2. After the Own Occupation Period, it means that as a result of an Injury or Sickness the Insured Employee is not able to engage with reasonable continuity in any occupation in which the Insured Employee could reasonably be expected to perform satisfactorily in light of the Insured Employee's age, education, training, experience, station in life, and physical and mental capacity; and that exists within any of the following locations:
a. a reasonable distance or travel time from the Insured Employee's residence in light of the commuting practices of his or her community;
b. a distance or travel time equivalent to the distance or travel time the Insured Employee traveled to work before becoming Disabled; or

c. the regional labor market, if the Insured Employee resides or did reside prior to becoming Disabled in a metropolitan area.

The Policy also provides:

LIMITATION. If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:

1. will be payable subject to the terms of this Policy; but

2. will be limited to 24 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Mental Sickness or Substance Abuse, as defined below.

"Mental Sickness" means any emotional, behavioral, psychological, personality, adjustment, mood or stress related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:

1. schizophrenia or schizoaffective disorder;

2. bipolar affective disorder, manic depression, or other psychosis; and

3. obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment." [**Exhibit 1**]

15. The Plan requires applicants to apply for Social Security benefits. Under the Plan, Plaintiff's LINCOLN benefit payment will be offset by her Social Security Benefit payment. [**Exhibit 1**]

16. Under the policy, the benefit value is 60% of Plaintiff's salary prior to becoming disabled and the minimum benefit is 10% of the Insured Employee's Monthly Benefit.

17. While a claimant is disabled under the plan her premiums are paid on the life insurance plan. [**Exhibit 1**]

**<u>Claim Value</u>**

18. The benefit value is $5,128.69 per month.

19. The gross total value of the claim under the plan is $861,619.92.

**<u>Social Security Claim</u>**

20. As required by the Plan, Plaintiff applied for Social Security Disability. She was

approved June 8, 2020, with a disability onset date of June 29, 2018. She advised LINCOLN of her approval.

21. Social Security Disability, or Title II of the Social Security Act, is administered by the Social Security Administration. Title II appears in the United States Code as §§401-433, subchapter II, chapter 7, Title 42.

22. The Social Security Administration's website states:

> "The definition of disability under Social Security is different than other programs. Social Security pays only for total disability. No benefits are payable for partial disability or for short-term disability.
>
> "Disability" under Social Security is based on your inability to work. We consider you disabled under Social Security rules if:
>
> You cannot do work that you did before;
>
> We decide that you cannot adjust to other work because of your medical condition(s); and
>
> Your disability has lasted or is expected to last for at least one year or to result in death.
>
> This is a strict definition of disability. Social Security program rules assume that working families have access to other resources to provide support during periods of short-term disabilities, including workers' compensation, insurance, savings and investments." http://www.socialsecurity.gov/dibplan/dqualify4.htm
>
> "Your condition must interfere with basic work-related activities for your claim to be considered. If it does not, we will find that you are not disabled. . . ."
> http://www.socialsecurity.gov/dibplan/dqualify5.htm

**Disabling Condition**

23. During Plaintiff's employment with EMPLOYER, Plaintiff suffered deteriorating health causing chronic pain. She underwent a variety of treatments, but became worse over time. Plaintiff's doctor recommended she seek disability benefits

*Diagnoses*

- Acetabular Dysplasia, bilateral. [a disorder that occurs when the acetabulum (hip socket) is shallow and doesn't provide sufficient coverage of the femoral head (ball), causing instability of the hip joint.]
- Adjustment Disorder
- Arthropathy of Lumbar Facet
- Chondromalacia
- Chronic Pain
- Degenerative Facet Disease - lumbar spine
- Diverticulosis

- Fibromyalgia [a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues]
- Heart Murmur
- Inflammatory Polyarthritis
- Joint Hypermobility Syndrome
- Major Depressive Disorder
- Myofascial Pain Syndrome
- Neuropathy - left leg and nerve pain
- Obsessive Tendencies
- Osteoarthritis, left hip
- Polyarthritis
- Reactive Airway Disease
- Rheumatoid Arthritis
- Spondylosis, Lumbar
- Weakness of Hands, bilateral

24. Crystal Tobin suffers from many conditions which contribute to her chronic pain. Among these is fibromyalgia which appears to amplify painful sensations by affecting the way the brain processes pain signals. Symptoms of fibromyalgia include:

> Widespread Pain. To be considered widespread, the pain must be bilateral and occur above and below the waist.
>
> Fatigue. People with fibromyalgia fail to awake refreshed despite sleeping for long periods of time.
>
> Cognitive Difficulties. A symptom commonly referred to as "fibro fog" impairs the ability to focus, pay attention and concentrate.

"The pain and lack of sleep associated with fibromyalgia can interfere with your ability to function at home or on the job. The frustration of dealing with an often-misunderstood condition also can result in depression and health-related anxiety."[1]

25. Crystal also suffers from Joint Hypermobility Syndrome. Hypermobility refers to joints which are more flexible than average. Joint Hypermobility Syndrome is evaluated when such mobility causes pain. Symptoms of joint hypermobility syndrome include:

> Regular pain or stiffness in the joints or muscles
> Repeated sprains and strains
> Repeated dislocation of joints (joints "pop out")
> Poor balance or co-ordination
> Thin, stretchy skin
> Digestive problems like diarrhoea or constipation

Joint hypermobility syndrome is without a cure.

[1] https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780

26. Crystal's hand are visible evidence of her disease state. Jaccoud's arthropathy is characterized by deformation of the hands. She shows Swan neck deformity (a deformed position of the finger, in which the joint closest to the fingertip is permanently bent toward the palm while the nearest joint to the palm is bent away from it) and ulnar deviation (a hand deformity in which the swelling of the big knuckles at the base of the fingers causes the fingers to become displaced, tending away from the thumb towards the little finger).

27. Crystal Tobin uses medication to combat her pain including Topiramate (nerve pain medication) 25 mg as needed; Ibuprofen 800 mg as needed; Gabapentin (nerve pain medication) 900 mg three times per day; Hydroxychloroquine (arthritis medication) 200 mg two times per day; Nortriptyline (nerve pain medication) 20mg two times per day, sometimes she takes an additional 10mg at bed time; Flexeril (muscle relaxant) 10 mg at bed time.

28. Crystal Tobin completed questionnaires regarding her Sleep, Pain, and signs of Illness in February, 2020. She reports her sleep is disrupted and affects her cognitive abilities. Most of her joints are in pain. "[F]eels like breaking bones in arms." She requires assistance with dressing, lifting and carrying, home care, and shopping.

29. Crystal Tobin's efforts at therapy are complicated by the conflict for fatigue and pain versus the need to strength train. Mrs. Tobin engages in water therapy, however her land-based efforts at therapy have been defeated by pain.

30. Crystal Tobin utilizes medication to combat her pain including Ibuprofen (pain, swelling), Cyclobenzaprine (muscle spasms), Gabapentin (nerve pain, depression), and Trazodone (insomnia).

**Disability Claim**

31. Plaintiff applied for disability benefits through LINCOLN, beginning April 22, 2017. She was approved and paid for two years based on her inability to perform her own occupation. Lincoln then reviewed her claim to determine if Plaintiff could perform Any Occupation.

**Any Occupation Review**

32. Lincoln obtained medical records beginning in 2013 and ending January 11, 2019. It provided the records to Dr. Gregory Smith to complete a peer review report. Following the review Lincoln wrote,

> "In his peer report, Dr. Smith determined that you did have functional limitations due to rheumatoid arthritis and fibromyalgia, but that you would have the capacity to perform a sedentary occupation that did not require frequent use of your hands for keyboarding and handling/gripping. . . ."

33. Dr. Smith's review states, "Occupation is noted to be a Clerk." This is incorrect.

34. Crystal Tobin's medical conditions limit her ability to use her hands to occasionally. Occasionally is defined as up to 1/3 of the time. In an eight hour day this would be up to three hours of activity combining keyboarding and writing. No position at the compensation level required would necessitate such little hand use. Yet Lincoln identified two jobs it claimed Plaintiff could perform. The two positions, Employee Welfare Manager and Compensation Manager. Both require extensive research which would necessitate either hand use or travel. Both also require intensive attention which would be impaired by pain and "fibro fog". The suggestion these sedentary occupations would "not require frequent use of your hands for keyboarding and handling/gripping" lacks credibility. Both positions would require significant computer use. For example a Google search of "job duties Compensation Manager" results in several summaries such as:

> "Compensation managers are responsible for researching, establishing, and maintaining a company's pay system. This involves researching and understanding the current and upcoming competitive markets for employee pay and benefits."[2]

Efficient research and communication requires either typing or face-to-face meetings, both actions Crystal Tobin is limited in her ability to perform.

**Primary Denial**

35. Based on the opinion Crystal Tobin could perform one of the two jobs it identified,

---

[2] www.thebalancecareers.com

Lincoln terminated her benefits June 22, 2019.

36. With the assistance of counsel Plaintiff appealed Lincoln's benefit denial. In support of her appeal she submitted updated medical records.

37. Lincoln sent Crystal Tobin to an Independent Medical Examination (IME) November 7, 2019. The IME doctor estimated she could perform sedentary work.

38. In response to the IME Crystal Tobin scheduled a Functional Capacity Evaluation (FCE). Unlike an IME, where the doctor gives an estimate or opinion, an FCE specifically tests physical capabilities[3]. Plaintiff's ability to attend the FCE was complicated because she had to undergo hip replacement surgery prior to attending. Mrs. Tobin then underwent a hip replacement surgery December 2, 2019 followed by physical therapy into March, 2020. Once she was stable she attended a FCE May 28, 2020. The FCE found:

"Overall Level of Work: Unable to Perform the Full Range of Sedentary. Unable to exert up to 10 pounds of force occasionally, and/or negligible amount of force constantly (Constantly: activity or condition exist 2/3 or more of the time) to move objects. Most Sedentary work requires Frequent or higher sitting, and at least Occasional standing. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be, and is, physically demanding of a worker even though the amount of force exerted is negligible.

- No safe or functional abilities for lifting, carrying, pulling, or pushing in a work situation.
- Occasional tolerance for sitting.
- Rare tolerance for standing.
- Rare tolerance for walking.
- Low tolerances for UE function involving bilateral UE and hands for reaching, gross motor activity, and fine motor activity due to deformity and mal-alignment of involved fingers, immobility, poor coordination, weakness, pain, and guarding.
- Stairs, Steps, Balance, squatting, and kneeling are all unsafe and unable in a work situation.

Physical difficulties/limitations were due to impairments including pain, range of motion, paresthesia, and muscle strength. Regions involved that limited function include the bilateral hands and fingers, L/S, bilateral hips, and grossly the bilateral lower extremities. The pt is not capable of functioning at the full range of Sedentary work.

---

[3] https://www.legalmatch.com/law-library/article/independent-medical-examinations-vs-functional-capacity-evaluations.html

MAJOR AREAS OF DYSFUNCTION

- Dynamic strength
- Position Tolerance
- Mobility
- Static and Dynamic posturing
- Movement patterning
- Balance/Gait
- Gripping
- Handling - fine and gross
- Power Gripping
- Stability and coordination of hands with UE specific activities.
- Endurance"

39. Plaintiff provided the FCE results to Lincoln.

40. Lincoln responded by sending Plaintiff's file to Exam Coordinators Network where it was reviewed by Naveed Natanzi, D.O.

41. Lincoln provided Dr. Natanzi's report to Plaintiff for review. Plaintiff responded with the many issues she found in the report.

**Dr. Natanzi's Report Fails the Credibility Test**

42. Lincoln asked Dr. Natanzi for Crystal Tobin's impairing diagnoses *without* a limiting time range. Dr. Natanzi opined **no** impairments. This despite the fact Plaintiff underwent surgery during the time period under review.

43. Dr. Natanzi modified his "no impairments" opinion by stating, due to Mrs. Tobin's age, gender, and history of chronic pain, she would be limited to exerting 20 to 50 pounds of force only occasionally and 10 to 25 pounds of force frequently. This opinion contradicts Lincoln's own findings.

44. Lincoln paid Crystal Tobin for her own occupation period, as it agreed she was limited from performing her own occupation due to her limitations in utilizing her arms and hands. The report of the Independent Medical funded by Lincoln showed Mrs. Tobin suffered impairment in her ability to lift and carry, stand and walk, finger and reach on both sides. Dr. Natanzi finds limitations far less restrictive than those opined by the IME doctor, to say nothing of the restrictions imposed by the FCE. The failure of Dr. Natanzi to find similar restrictions palces Dr. Natanzi's opinion into question, and the report

raises further red flags.

**Lincoln Asked Dr. Natanzi to Evaluate the Validity of the Functional Capacity Evaluation**

45. This is a very unusual request. It is well known an FCE is particularly useful when determining the abilities of a person possessing subjective symptoms, such as pain and fatigue. Dr. Natanzi found the FCE "invalid". He discounted all test results within the test. He wrote, "There does not appear to be any built-in validity testing in the FCE." Yet the FCE report contains the following:

"This report summarizes the results of the ErgoScience FCE Physical Work Performance EvaluationTM. **This evaluation is substantiated by reliability and validity research** conducted at the University of Alabama at Birmingham and reported in the Journal of Occupational Medicine, September 1994 - Lechner DE, et al. Journal of Occupational Medicine. September 1994 Volume 36, No. 9: pages 997-1004."

"The ErgoScience FCE utilizes a formal consistency of effort protocol **established and validated** by Stokes et al. [emphasis added]"

"This **test, completed today, demonstrated good validity** and reliability based on all measures utilized." [emphasis added]

46. The FCE report concluded with the tester's telephone number. If Lincoln or Dr. Natanzi were unable to understand the reported testing validation, both possessed the ability to follow up.

47. The Journal of Physical Therapy compared the standard types of FCE systems for difficulty, reliability and validity. Crystal Tobin's FCE was ErgoScience (PWPE). The ErgoScience PWPE is listed as valid, reliable, peer reviewed, and standardized.

48. Plaintiff provided Lincoln with the CV of the Physical Therapist who performed the FCE . The CV emphasizes the therapist's extensive ongoing training and formal education. The therapist is a certified evaluator with two companies in two different methodologies. All reported testing used ErgoScience Method scoring methodology to objectively score each task and set of tasks as a whole. When asked about Dr. Natanzi's validity comments, he pointed out the wide availability of comments and studies. Plaintiff provided these to Lincoln:

- Journal of Physical Therapy report;
- ErgoScience scoring methodology from testing manual - task specific and testing

procedures.

- Stokes, HM et al. Identification of Low-effort Patients Through Dynamometry. Journal of Hand Surgery. Vol 20A, No 6, November, 1995, pp. 1047 – 1055.
- Lechner DE, et al. Journal of Occupational Medicine. September 1994 Volume 36, No. 9: pages 997-1004.
- Waddell Signs "Waddell's signs are a group of physical signs, first described in a 1980 article in Spine, and named for the article's principal author, Professor Gordon Waddell (1943–2017), a Scottish Orthopedic Surgeon.[1][2] Waddell's signs may indicate non-organic or psychological component to chronic low back pain. Historically they have also been used to detect malingering in patients with back pain." [4]

The therapist summed up findings on FCE validity essentially as FCE's are the best measure of functional capacity which can be performed. Given the variability of human beings the results are the best which can be achieved.

49. With her August 10, 2020 response to Dr. Natanzi's report Crystal Tobin provided a copy of her Social Security approval and the entire Social Security record utilized for her hearing. In the approval letter the Judge wrote, "the record as a whole supports a sedentary exertional level [with only] occasional bilateral upper extremity limitations." As a result, "The vocational expert testified that there are no transferable skills."

50. Plaintiff requested: "Please provide this letter . . . to Naveed M. Natanzi, D.O., for response."

**ERISA Violation**

51. There is no evidence Plaintiff's response was provided to Dr. Natanzi. This is a violation of the United States Department of Labor Regulations which came into effect April 1, 2018. Among other changes, these regulations require an insurance company must allow claimants to respond to reports the insurer relies upon to deny disability prior to issuing a final decision. See 29 CFR 2560.503-1(l) Claims Procedure, Failure to Establish and Follow Reasonable Claims Procedures. The intent of this amendment is to allow the claimant to complete the dialog regarding her benefit denial prior to litigating. Lincoln

[4] https://en.wikipedia.org/wiki/Waddell%27s_signs#:~:text=Waddell's%20signs%20are%20a%20group,to%20chronic%20low%20back%20pain.

blocked this step.

**Final Administrative Denial**

52. Lincoln apparently relied upon Dr. Natanzi's opinion despite its credibility issue. LINCOLN responded to Plaintiff's August 10 letter by re-affirming its denial benefits of benefits August 31, 2020. The denial exhausted Plaintiff's administrative remedies.

53. That letter ended Lincoln's contact with Plaintiff regarding her future claim. Despite this Lincoln continued to contact Plaintiff to demand she pay it her Social Security benefit back pay in the amount of $18,577.27.

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT: ERISA PLAN BENEFITS (ERISA 502(a)(1)(B) and 502(a)(3):**

PLAINTIFF CRYSTAL TOBIN, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY ALLEGES:

54. Plaintiff refers to Paragraphs 1 though 53 above and incorporates those paragraphs as though set forth in full in this Cause of Action.

55. Plaintiff was enrolled under the Plan which at all relevant times was in full force and affect. The terms and conditions of the plans at issue provided the Plaintiff would receive disability payments/income replacement payments due to sickness or injury if she could no longer perform the material and substantial duties of any occupation while under a doctor's care. The plan and its promised benefits were provided to Plaintiff as part of her compensation in exchange for providing service to EMPLOYER and is thereby subject to ERISA.

56. Plaintiff performed all the conditions on her part which the plan required her to perform.

57. On or about April 22, 2017, Plaintiff became disabled and timely submitted a claim for disability benefits. LINCOLN denied benefits June 22, 2019. Defendant LINCOLN stated Plaintiff was capable of performing some job duties.

58. Defendants breached the terms of the plans thereby violating 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3), by continually refusing and failing to pay disability benefits

to Plaintiff.

59. As a direct and legal result of the violation of 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3), by Defendant as herein alleged, Plaintiff suffered, and will continue to suffer in the future, damages under the terms of the policy, plus interest, for a total amount to be determined at the time of trial.

60. Defendants have unreasonably, arbitrarily and capriciously breached the obligations set forth in the ERISA regulations and in the plans issued by Defendants. Defendants unreasonably, arbitrarily and capriciously withheld from Plaintiff the benefits promised by the plan.

61. LINCOLN's evaluation of Plaintiff's claim served the ends of LINCOLN, rather than the insured's best interests. This is a violation of 29 U.S.C. §1132, ERISA 502(a)(1)(B) and 502(a)(3).

**SECOND CAUSE OF ACTION: FOR AN AWARD OF ATTORNEYS FEES AND COSTS AGAINST DEFENDANT PURSUANT TO 29 U.S.C. § 1132(g)(1)**

PLAINTIFF CRYSTAL TOBIN, FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY ALLEGES:

62. Plaintiff refers to Paragraphs 1 though 61 above and incorporates those paragraphs as though set forth in full in this Cause of Action.

63. 29 U.S.C. §1132(g)(1) authorizes this Court to award reasonable attorney's fees and costs of action in an ERISA action.

64. As a result of the actions and failings of the Defendants, Plaintiff retained the services of legal counsel and has necessarily incurred attorney's fees and costs in prosecuting this action. Further, Plaintiff anticipates incurring additional attorney's fees and costs in pursuing this action, all in a final amount which is currently unknown. Plaintiff therefore requests an award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them, as follows:

1. Damages to date of judgment for failure to provide full benefits under the Plan, plus interest, including prejudgment interest, in a sum to be determined at the time of trial;
2. For attorneys' fees and expenses reasonably incurred by Plaintiff to obtain the Plan benefits, in a sum to be determined at the time of trial;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court deems just and proper.

DATED: November 16, 2020

DAVID ALLEN & ASSOCIATES

*//s// David Allen*

By______________________________
DAVID ALLEN
Attorney for Plaintiff,
CRYSTAL TOBIN